SCHWABACHER et al. v.
UNITED STATES
et al.

No. 1738–51.

United States District Court.
District of Columbia.

May 9, 1952.

876

Kenneth L. Kimble, Washington, D. C., McFarland & Sellers, Washington, D. C., of counsel, for plaintiffs.

Robert W. Strange, Sp. Asst. to Atty. Gen., H. G. Morison, Asst. Atty. Gen., James E. Kilday, Sp. Asst. to Atty. Gen., of counsel, for U. S.

C. H. Johns, Attorney, I. C. C., Washington, D. C., Daniel W. Knowlton, Chief Counsel, I. C. C., Washington, D. C., of counsel, for Interstate Commerce Commission.

William E. Miller and Stephen Ailes, both of Washington, D. C., R. W. Purcell and Joseph C. Kauffman, both of Cleveland, Ohio, and Steptoe & Johnson, Washington, D. C., of counsel, for Chesapeake & O. R. Co.

Before FAHY, Circuit Judge, and HOLTZOFF and TAMM, District Judges.

TAMM, District Judge.

*Factual Background.*

This is an action to enjoin, set aside, annul and suspend in part two orders of the Interstate Commerce Commission (hereafter called the Commission). This Court has jurisdiction under Section 1336 of Title 28 United States Code. The first order challenged in this action was published April 1, 1947, and was entered in a proceeding before the Commission designated Finance Docket No. 15228. That order approved a merger of Pere Marquette Railway Company (hereafter called Pere Marquette) into The Chesapeake and Ohio Railway Company (hereafter referred to as Chesapeake and Ohio) under Section 5(2) of the Interstate Commerce Act as amended, Section 5(2), Title 49 U.S.C.A. After review of this order by the Supreme Court and remand to the Commission, a Supplemental Order was entered under the same docket number on May 9, 1949. This second order, except for a modification described below, affirmed the provisions of the earlier order.

The plaintiffs in this action own, in the aggregate, 2,100 shares of $100 par value 5% cumulative preferred stock of Pere Marquette. Their combined interests represented 2% of the outstanding stock of that class. The defendants are the United States of America and the Interstate Commerce Commission. The Chesapeake and Ohio has intervened as a defendant under the provisions of Section 2323 of Title 28 United States Code.

In March, 1946, The Chesapeake and Ohio, Pere Marquette and the Allegheny Corporation (which controlled the Chesapeake and Ohio) filed a joint application with the Commission under Section 5 of the Interstate Commerce Act, Section 5, Title 49 U.S.C.A., for approval of a merger agreement. Under the agreement, the Pere Marquette was to be merged into the Chesapeake and Ohio, and its stock was to be exchanged for stock of the Chesapeake and Ohio. Shortly after the application was filed with the Commission, the agreement was approved by the requisite number of stockholders of each railroad, as required by state law.

The Commission's hearings on the proposed merger were held in April, 1946, at which representatives of some of each of the three classes of stockholders of Pere Marquette participated as protestants. Following the closing of the record and the filing of briefs, a proposed report recommending approval of the merger was served upon the parties. Several weeks later, in November, 1946, the plaintiffs here asked leave to intervene to file exceptions to the proposed report. Their request was granted.

Under the merger, each share of plaintiffs' stock would be converted into eight-tenths of one share of 3½% convertible Chesapeake and Ohio preferred stock (a new issue) and four-tenths of one share

of common stock. Each new share of the Chesapeake and Ohio could be converted into 1.6 shares of common stock on a fixed conversion price of $100 for the preferred stock and an initial conversion price of $62.50 for the common stock. Plaintiffs were opposed to the terms of the merger because they claimed that under the liquidation provisions of Pere Marquette's charter and the laws of the State of Michigan they were entitled, as of February 1, 1946, to cash or an equivalent of $172.50 (par value plus arrearages) for each share. The plaintiffs sought to have the Commission treat the merger as a liquidation and to give effect in determining the ratios of stock exchanges to the liquidation provisions of the Pere Marquette charter and the laws of Michigan. This the Commission had not done.

On January 10, 1947, the parties, including plaintiffs, were heard on oral argument by Division 4 of the Commission. On April 1, 1947, Division 4 issued its report and order approving the proposed merger and the issuance of securities in accordance with its terms, but declined to determine whether dissenting stockholders as members of a class created by the merger were entitled to any better treatment by virtue of their charter contract. Petitions for reconsideration were denied by the entire Commission on May 20, 1947.

On May 29, 1947, plaintiffs filed an action in the United States District Court for the Eastern District of Virginia to set aside the Commission's order on the grounds that "failure to include protection for plaintiffs as dissenting shareholders, as a distinct class created by the merger is contrary to law and a direct violation of the Commission's statutory duty to impose just and reasonable conditions for the protection of all interests involved." Schwabacher v. United States, D.C., 72 F.Supp. 560, 561. On June 4, 1947, that Court heard argument on plaintiffs' request for a temporary stay of the Commission's order. The temporary stay was denied, and on June 6, 1947, the merger was consummated. The Court subsequently dismissed the complaint, and the plaintiffs then appealed to the Supreme Court.

The question which plaintiffs presented to the Supreme Court was whether the Commission, in view of its authority over mergers, could decline to determine just what the dissenting stockholders' legal rights were under the State law and the Pere Marquette charter and to recognize them in full by the terms of the merger. Schwabacher v. United States, 334 U.S. 182, 189, 68 S.Ct. 958, 968, 92 L.Ed. 1305. The Court held that neither party's position was correct; that the Commission should have considered the liquidation rights under the charter "to the extent that they may affect intrinsic or market values", and since it was not clear from the report that the Commission had done this, the judgment of the lower court was reversed and the case remanded to the Commission for reconsideration upon the principles expressed. With respect to the asserted claim under state law, the Court said:

"* * * In appraising a stockholder's position in a merger as to justice and reasonableness, it is not the promise that a charter made to him but the current worth of that promise that governs, it is not what he once put into a constituent company but what value he is contributing to the merger that is to be made good. * * * Consequently the liquidation preferences were only one factor in valuation rather than determinative of amounts payable. * * * Since the federal law clearly contemplates merger as a step in continuing the enterprise, it follows that what Michigan law might give these dissenters on a winding-up or liquidation is irrelevant, except insofar as it may be reflected in current values for which they are entitled to an equivalent." 334 U.S. at pages 199, 200, 68 S.Ct. at page 967.

The case was remanded to the Commission because it was not clear under the language of the First Report whether the Commission had given consideration to the "current worth", if any, of plaintiffs' liquidation rights. Thus, the Court said:

"While the Commission has found that what the appellants are given in this plan is just and reasonable, the

record indicates that it may have declined to consider these claims, even if they are found to have some effect on the intrinsic value of the stock, because it thought it lacked jurisdiction. Under these circumstances, we cannot be sure that in arriving at its conclusion that the plan was just and reasonable it did not exclude some factors that it should consider under the views set out in this opinion." 334 U.S. at page 201, 68 S.Ct. at page 968.

Briefs were submitted to the Commission in connection with its reconsideration under the terms of the Supreme Court's opinion. On May 9, 1949, the Commission issued its second report (hereafter referred to as the Report on Reconsideration) and entered an order as of that date approving the merger agreement for the second time. This latter report recounted the proceedings on appeal, analyzed the decision of the Supreme Court, and stated that the Commission's only function on reconsideration was to make sure that the liquidation rights of the Pere Marquette cumulative preferred stock were considered to the extent that they might affect the intrinsic or market value of the stock. The Commission noted that the likelihood of liquidation of Pere Marquette, as one of the essential transportation facilities of the country, was extremely remote. It then held that the preferred stock's prior right to dividends rather than its liquidation preferences were significant in evaluating the stock. After this analysis, the Commission held that Division 4 had adequately considered these matters.

Plaintiffs, in substance, seek from this Court an order directing the Commission to revise the merger terms and to award to plaintiffs more Chesapeake and Ohio stock in exchange for their holdings of Pere Marquette cumulative preferred stock than is provided for in the present merger terms. They attack both the first and supplemental orders on three principal grounds. As stated by the plaintiffs, these grounds are: (1) The findings in the Report on Reconsideration are materially inconsistent with the findings in the First Report relating to the justness and the reason-

ableness of the terms for exchange of stock and demonstrate the errors in those earlier findings; (2) The findings in both reports when considered together do not support the ultimate finding of justness and reasonableness; (3) The findings of the Commission in its Report on Reconsideration do not support its conclusion that the liquidation preferences have no value and were given adequate consideration in its First Report. All parties before the Court have filed motions for summary judgment. The Court has before it only the orders and reports of the Commission. The plaintiffs have not attacked the sufficiency of the evidence on which the Commission relied in making its findings; consequently, the record of the proceedings before the Commission has not been brought to this Court. This Court's task, then is to determine whether the Commission has acted in conformity with the opinion of the Supreme Court and the requirements of the statute.

*Plaintiffs' Allegation of Inconsistency.*

The first contention of the plaintiffs to be considered is that the findings of the Commission in the Report on Reconsideration are materially inconsistent with and demonstrate the errors in the findings of the First Report.

The inconsistency alleged lies, according to the plaintiffs, in the Commission's findings on the prospect of eventual payment of arrearages on the preferred and resumption of dividend payments on the common. The language in the Report on Reconsideration which the plaintiffs maintain is inconsistent with the earlier language and deeds of the Commission is the following:

"Had the Pere Marquette continued as a separate company, there was reason to believe that, in view of the facts of record, all arrearages on the prior preference and preferred stocks would be paid and that dividends would eventually be resumed on the common. It was the prospect of ultimate payment of these arrearages and the resumption of payment of dividends on the common, rather than any possibility of actual liquidation that weighed heavily in giving intrinsic or market value to the several classes of Pere Marquette

stock, whether that company was to continue its separate existence or merge with some other company."

A reading of the First Report does not reveal that the Commission made any specific finding on the subject of the prospect of dividends on the Pere Marquette Common stock. It did refer to the fact that holders of Pere Marquette common stock had received no dividends since 1931, and in a footnote mentioned the witnesses for the applicant carriers had agreed that the common stockholders could not expect to receive dividends for many years to come. It noted that Chesapeake and Ohio dividends were being paid regularly, and after determining dividend prospects on the Chesapeake and Ohio common stock and on the preferred stock, it said: "On the whole, it would seem that the prospects of Pere Marquette stockholders for returns on their investments would be enhanced by merger of their company with the Chesapeake and Ohio." Later, the Commission noted that a holder of Pere Marquette common stock would fare much better as a holder of Chesapeake and Ohio common stock "if, as testified, the prospect of any dividend on the (Pere Marquette) common is indeed many years away." These are the only references to future dividend payments in the First Report. These statements are not inconsistent with the Commission's finding on this subject in the Report on Reconsideration. Counsel for the plaintiffs have not pointed to any other language in the First Report on which they rely to establish the inconsistency. It does not appear to the Court that the findings of the Commission in its Report on Reconsideration on the prospect of eventual payment of arrearages and resumption of payment of dividends is at all inconsistent with the language of the First Report.

The plaintiffs seek also to establish an inconsistency on the basis of the security exchange terms which the Commission approved. A discussion of this question requires a brief exposition of the ratios of stock exchange approved by the Commission. At the time of the merger application, Pere Marquette had outstanding a total of 686,735 shares with a par value of $68,-673,612. This was comprised of 124,288 shares of $100 par value 5% cumulative preferred stock; 111,999 shares of $100 par value 5% cumulative prior preference stock; and 450,448 shares of $100 par value common stock. The specific ratios of stock exchange approved were:

(a) One share of Pere Marquette $100 par value 5% cumulative preferred stock, including all accrued and unpaid dividends, for 9/10 of one share of Chesapeake and Ohio $100 par value 3½% convertible preferred stock and 4/10 of one share of Chesapeake and Ohio $25 par value common stock.

(b) One share of Pere Marquette $100 par value 5% cumulative prior preference stock, including all accrued and unpaid dividends, for one share of Chesapeake and Ohio preferred stock and ⅓ of one share of Chesapeake and Ohio common stock.

(c) One share of Pere Marquette common stock for 1/2 of one share of Chesapeake and Ohio common stock.

Thus, the holders of Pere Marquette preferred stock, such as the plaintiffs, were to give up their $100 par value 5% cumulative preferred stock with dividend arrearages of $72.50 a share for Chesapeake and Ohio 3½% preferred stock having a par value of $80 and Chesapeake and Ohio common stock with a par value of $10, or a total par value of only $90.

One of the methods of valuation utilized by the Commission to determine the justness and reasonableness of the exchange terms was an examination of the comparative earnings of the stock to be received and the stock to be surrendered. The Commission estimated the prospective earnings on the new Chesapeake and Ohio stock to be issued and concluded that a holder of a share of Pere Marquette preferred stock could anticipate a yield of $4.20 on the Chesapeake and Ohio stock to be received in exchange. (On exercise of the conversion provision, the anticipated return would be $5.88.) The plaintiffs point out that Pere Marquette preferred stock carried an annual dividend of 5%, or $5 per share. If, in fact, the Commission in determining

the exchange ratio considered that there was a prospect that "all arrearages on the prior preference and preferred stocks would be paid and that dividends would eventually be resumed on the common," the plaintiffs contend that they should have received more Chesapeake and Ohio stock in exchange. They point to the fact that the annual return on Pere Marquette preferred stock would be $19.50 per share if the arrearages were paid off in five years, $12.25 if paid off in ten years, $7.90 if paid off in twenty-five years, and $6.45 if paid off in fifty years. The plaintiffs argue that it is quite unrealistic to expect an investor to accept stock with an anticipated yield of only $4.20 per share and no arrearages in exchange for stock bearing annual dividends of $5 and arrearages of $72.50 per share if there is a reasonable expectancy that those dividends and arrearages will be paid. As a consequence, they contend that the Commission could not have considered this prospect of eventual arrearage payment in determining the exchange ratio.

The Court's attention is called also to the Commission's findings with respect to the market prices of the stock exchange. The plaintiffs argue that these findings as well demonstrate that the Commission did not actually consider the prospect of payment of arrearages in its original deliberations. In the Commission's First Report it found that the Chesapeake and Ohio stock to be received in exchange for each share of Pere Marquette preferred stock would have a par value of $90 and an estimated market value of $99.70. This estimate was based on New York stock exchange quotations for the Chesapeake and Ohio common stock and the assumption that the Chesapeake and Ohio preferred stock, which had not yet been issued, would have a market value of par. At the time of the Commission's deliberations, the market value of Pere Marquette preferred stock was $87. This is the exchange which the Commission has found to be fair and reasonable. However, the plaintiffs contend that it is obvious that a share of $100 par value stock bearing dividends annually and arrearages of $72.50, when the prospect is that all dividends and arrearages will be paid, is worth far in excess of $99.70. They conclude that it is equally obvious that the Commission in approving the exchange could not have considered the prospect of the preferred shareholders ultimately receiving all of that to which they were entitled under their charter.

The Court does not agree with the plaintiffs. The exchange ratios approved by the Commission are as consistent with the findings of the Report on Reconsideration as is the language of the First Report. The Commission, in its Report on Reconsideration, referred to the "prospect of *ultimate* payment of these arrearages and the resumption of payment of dividends on the common." (Emphasis supplied.) It will be noted that there is here no finding that full arrearage payments were imminent and that payment of dividends on the common stock would be resumed in the near future. The Court believes this is most significant. Nothing has been brought to its attention which suggests that the exchange ratios which the Commission approved in its First Report and order were based on any theory other than that ultimately, though not immediately, the arrearages on the preferred stock would be paid, and then dividends would be resumed on the common stock. This is not inconsistent with the findings of the Report on Reconsideration. The fact that the Commission approved exchange ratios which awarded substantial value to the Pere Marquette common stock demonstrates that the Commission necessarily recognized the prospect that dividends would ultimately have been resumed on the common stock, which is precisely what is said in the Report on Reconsideration. It appears to the Court entirely reasonable and consistent with the Report on Reconsideration for the Commission to hold that a *present right* to $4.20 a year is as much to be desired as a *future hope* for $5 a year plus ultimate payment of arrearages, and Pere Marquette preferred stock with a market value of $87 is adequately compensated for with Chesapeake and Ohio stock with a market value of $99.70, even though there is the ultimate prospect that holders of the preferred stock

might at some future date receive their arrearages in full. Security purchasers apparently agreed with the Commission. This preferred stock sold in the market place for approximately one-half of par plus arrearages, while the common stock which was selling at $28.85 was valued by the security purchaser at a little over one-fourth of par.

The Court can find no inconsistency between the two reports.

*Plaintiffs' Allegation that Finding of Justness and Reasonableness is Erroneous.*

The Court turns now to the second argument of the plaintiffs. In its Report on Reconsideration, as in the First Report, the Commission made the ultimate finding that the exchange terms are just and reasonable.[1] The plaintiffs contend that the findings in both reports when considered together make it clear that this ultimate finding is erroneous. According to the plaintiffs, consideration of both reports demonstrates that on the basis of every valuation approach utilized by the Commission, the ultimate finding is unsupported.

The plaintiffs argue that one of the methods of valuation used by the Commission in determining the justness and reasonableness of the merger terms was to discover the price paid by the Chesapeake and Ohio for the Pere Marquette properties, on the theory that in practical effect the merger amounted to purchase of all of the latter's properties. They seek to support their contention on the basis of alleged errors of the Commission in making this valuation.

The Commission found that Pere Marquette's investment in transportation property, less depreciation and amortization, was approximately $114,000,000 and con-

cluded that Chesapeake and Ohio would pay approximately that much for it. It determined the price paid by taking the full book value as carried on Chesapeake and Ohio's books of the stock in Pere Marquette formerly held by Chesapeake and Ohio ($34,649,968); adding the par value of the new stock issued by Chesapeake and Ohio in the exchange ($28,949,745), less that held in its treasury because issued in exchange for the Pere Marquette stock previously held by it, bringing a figure of $23,770,495; and finally adding $55,806,736 representing the long-term Pere Marquette debt assumed by Chesapeake and Ohio. Thus, the total price paid was $114,227,199. The Commission concluded that the price paid "appears to be just and reasonable."

It is the view of the plaintiffs that in reaching that conclusion the Commission committed at least three substantial errors:

(1) First, it erred in considering as part of the price paid the figure of $34,649,968, the book value of Chesapeake and Ohio's holding in Pere Marquette. The Commission termed this "cancellation of investment in stock of Pere Marquette." In this very proceeding, the Commission found it fair for Chesapeake and Ohio to exchange stock with a par value of only $5,179,250 for this Pere Marquette stock previously held by it. The plaintiffs say that the Commission cannot find such an exchange to be fair and at the same time give Chesapeake and Ohio credit for a value of almost seven times as much in determining whether Chesapeake and Ohio paid a fair price for the Pere Marquette assets.

(2) Second, the Commission erred in determining the fairness of the price paid when, by its own admission, it did not "take into account current assets amounting, on the same date, to nearly $22,000,-

1. The statute, Section 5(2), Title 49 U.S. C.A., requires that the Commission find that merger terms are "just and reasonable". It provides:
   " * * * Whenever a transaction is proposed under subparagraph (a), the carrier or carriers or person seeking authority therefor shall present an application to the Commission, and thereupon the Commission * * * shall afford reasonable opportunity for interested parties to be heard * * *. If the Commission finds that, subject to such terms and conditions and such modifications as it shall find to be just and reasonable, the proposed transaction is within the scope of subparagraph (a) and will be consistent with the public interest, it shall enter an order approving and authorizing such transaction, upon the terms and conditions, and with the modifications, so found to be just and reasonable * * *."

000." These current assets exceeded current liabilities by almost $11,000,000.

(3) Third, the Commission erred in totally overlooking other Pere Marquette property acquired by Chesapeake and Ohio which had a book value of almost $17,000,-000. The Commission considered only Pere Marquette's transportation property and overlooked the following assets: miscellaneous physical property, less recorded depreciation, $1,083,622; investments in affiliated companies, $14,961,990; other investments, $687,684.

For the reasons set forth above, the plaintiffs contend that the findings of the Commission with respect to valuation on the basis of the property values acquired by Chesapeake and Ohio demonstrate that Chesapeake and Ohio did not pay a fair price for the Pere Marquette properties and, therefore, that the ultimate finding of justness and reasonableness is erroneous. The argument of the plaintiffs here is predicated upon the hypothesis that the Commission made its inquiry into the price paid by the Chesapeake and Ohio in order to establish proper stock exchange values. Such does not appear to be the case. The Commission prefaced its discussion of the consideration to be given by the Chesapeake and Ohio with the statement: *"From the viewpoint of public interest,* the price proposed to be paid by the Chesapeake and Ohio for the properties and franchises of the Pere Marquette appears to be just and reasonable." (Emphasis supplied.)

The Court is of the opinion that the Commission was here inquiring into the question whether the total price for the whole bundle of rights of the Pere Marquette was fair or whether it would saddle the public with an extra burden by reason of improper financing of the merger transaction. This goes to the public interest finding and not to the fairness of the ratio of exchange. It appears that this comparison was for the purpose of determining whether the Chesapeake and Ohio was building up an excessive rate base of capitalization which the public might be called upon to support in the transportation charges. The computation shows that the value of the property merged into the Chesapeake and Ohio system was at least equal to the price paid and to be paid and upon which that carrier might expect to earn a return. That the property acquired in the merger might have book value or a value for rate-making purposes over and above the price paid cannot be considered inimical to the public interest, which was the element here being considered by the Commission.

Since the question of fairness from the standpoint of the exchange values was not involved in the comparison, the argument of the plaintiffs based on the comparison is without merit.

The plaintiffs complain also that the Commission committed at least two errors which are apparent on the face of its findings in its valuation of the Pere Marquette stock surrendered on a capitalized earnings basis. The Commission took the years 1935–1939 as "typical of average experience." It found that the average net income of Pere Marquette for those years (adjusted to give effect to present interest charges and the resulting increase in federal income taxes) was $2,005,200 per year. To this figure it applied the rate of return contemplated for Chesapeake and Ohio's new preferred stock (3½%) and concluded that the value of all Pere Marquette stock was $58,720,000. The plaintiffs have called the Court's attention to the fact that in exchange for this stock under the merger agreement the Chesapeake and Ohio issued stock having a par value of less than $29,000,000 and an estimated market value of only about $36,000,000. This, according to the plaintiffs, is obviously not a fair exchange and, consequently, the Commission's finding of justness and reasonableness is without foundation.

The plaintiffs, in making this argument, overlook the fact that the Chesapeake and Ohio also assumed obligations of Pere Marquette amounting to $55,806,736. Having regard for this fact, the Court believes that the Commission's appraisal of the reasonableness of the exchange on the basis of the Pere Marquette's capitalized earnings was a proper one.

The Commission stated in its First Report that this method of valuation (i. e.,

capitalized earnings) indicated a value of $85.50 for each share of Pere Marquette stock "without regard to preferences." The plaintiffs argue that this statement clearly indicates that the Commission failed to fulfill its obligation to recognize fully the priorities of the preferred stock. They state further that: "if each share of stock of all classes (including the common as well as the two classes of preferred) was worth $85.50, then obviously the preferred with its sizeable arrearages was worth much more than it received here, particularly in view of the finding in the Supplemental Report (Report on Reconsideration) that those arrearages would eventually have been paid." The Court is of the opinion that no such sinister meaning should be given to or conclusion drawn from the Commission's statement. It appears to the Court that the proper interpretation of the Commission's statement is that, prescinding from any consideration of the preferences which otherwise would be accorded to the senior classes of securities, in capitalizing the historical average earnings at 3½% the maximum value to be accorded to any share of Pere Marquette stock is $85.50. The Court believes it is clear that the statement of the Commission under consideration does not support the plaintiffs' contention that the Commission failed to recognize the value of the preferred's dividends and arrearages. It is to be observed in this regard that the market value of the stock given in exchange for a share of preferred stock ($99.70) is somewhat higher than $85.50 while the market value of the stock given in exchange for the common stock ($24.625) was considerably less than $85.50.

*Plaintiffs' Allegation that Commission Failed to Comply with Mandate of the Supreme Court.*

The third argument advanced by the plaintiffs is that the Commission erred in refusing "to accord any value" to the liquidation rights of Pere Marquette's stockholders, thereby failing to comply with the mandate of the Supreme Court, and that the reasons given by the Commission in support of its valuation of the liquidation rights were so faulty as to make the ultimate finding of justness and reasonableness improper.

In remanding this case to the Commission, the Supreme Court stated:

"We therefore hold that no rights alleged to have been granted to dissenting stockholders by state law provision concerning liquidation survive the merger agreement approved by the requisite number of stockholders and approved by the Commission as just and reasonable. Any such rights are, as a matter of federal law, accorded recognition in the obligation of the Commission not to approve any plan which is not just and reasonable. In making that determination, those rights are to be considered to the extent that they may affect intrinsic or market values. While the Commission has found that what the appellants are given in this plan is just and reasonable, the record indicates that it may have declined to consider these claims, even if they are found to have some effect on the intrinsic value of the stock, because it thought it lacked jurisdiction. Under these circumstances, we cannot be sure that in arriving at its conclusion that the plan was just and reasonable it did not exclude some factors that it should consider under the views set out in this opinion. We therefore reverse the judgment below and remand the case to the Commission for reconsideration under the principles herein expressed." 334 U.S. at pages 201–202, 68 S.Ct. at page 968, 92 L.Ed. 1305.

The Commission's interpretation of the language of the Supreme Court is set forth in the Report on Reconsideration:

"As we read the opinion, the Supreme Court laid down the principles that this Commission is the exclusive and plenary forum under Sections 5 and 20a of the Interstate Commerce Act [49 U.S.C.A. §§ 5, 20a] independent of all other State or Federal authority, and that any rights granted to stockholders on a winding-up or dissolution do not survive a merger

agreement approved by the requisite number of stockholders and approved by us as just and reasonable, but that we, in determining whether a plan is just and reasonable, must consider such rights to the extent that they may affect intrinsic or market values."

The Court believes that the Commission's reading of the opinion of the Supreme Court is correct. The task of the Court, as has been observed, is to see that the Commission fully discharged the task assigned to it by the Supreme Court.

The plaintiffs contend that the Commission refused to assign "any value" to their liquidation rights. This is not so. It accorded "little weight" to these rights. The Commission correctly stated that:

"Any value that can be placed on the liquidation rights * * * must be only one that reflects the factual probability or improbability of an actual liquidation taking place at some particular date * * *".

A reading of the Commission's Report on Reconsideration discloses that its reasoning was as follows: Until actual liquidation occurs, liquidation rights are "inchoate." If liquidation is remote or highly improbable these liquidation rights will have little effect on either the intrinsic or the market value of the stock. Conversely, if liquidation were imminent, these rights might be of major importance. Pere Marquette was one of the essential transportation facilities of the country. Its liquidation was no more probable than was liquidation of the entire railroad system. The possibility of liquidation of the Pere Marquette being extremely remote, liquidation rights were entitled to little weight in evaluating the preferred stock. This is not to say, however, that preferred and common stock are to be treated alike. The preferred stock's prior right to dividends accounts for the major difference. Since there was reason to believe that the arrearages on the preferred stock would ultimately have been paid off, the common stock had some value which it would not have had were there no such prospect. It was the market evaluation of this prospect (rather than any inherent value in the liquidation rights) which determined the relative value of the various classes of Pere Marquette stock. Thus, since it may well have taken a long time for the arrearages to be made up, the preferred stock had a value substantially less than par plus arrearages ($172.50). Since, however, the prospect was that the arrearages would ultimately have been made up and dividends resumed on the common stock, the latter stock had some value. The Court holds that the action of the Commission complies in every respect with the opinion of the Supreme Court in this case.

Plaintiffs, however, object to what the Commission did here on four grounds:

(1) First, plaintiffs contend that the Commission should have analyzed the liquidation rights on the basis of their worth to an investor in a going concern. The Court is of the opinion that any reading of the Commission's report will disclose that that is precisely what the Commission did.

(2) Second, plaintiffs contend that "the Commission was wrong in concluding these rights had no value on the theory that it would not have permitted Pere Marquette to liquidate or terminate its existence because of its importance as a railroad." The plaintiffs suggested that, while abandonment of the property might not have been a reasonable prospect, the Pere Marquette could have been sold to another carrier and the proceeds distributed to Pere Marquette stockholders as on liquidation. It appears to the Court that the hypothesis on which the plaintiffs rely (i. e., the sale of a major railroad for cash) is an extremely tenuous one. The Commission's conclusion that actual liquidation was a remote prospect and that the liquidation rights were consequently of little value is, in the opinion of the Court, sound.

(3) Third, plaintiffs contend that the Commission expressly admitted that it had made no effort to determine the value of these liquidation rights. The Court is unable to find any such admission, either explicit or implicit, in the Commission's opinion.

(4) Fourth, plaintiffs object to the Commission's consideration of the fact that the

vast majority of the holders of Pere Marquette cumulative preferred stock thought so little of these liquidation rights that they were willing to surrender them in return for Chesapeake and Ohio preferred and common stock. This empirical test should not be employed, say the plaintiffs, "because the failure of other preferred stockholders to assert their preferences could have been the result of inertia, lack of knowledge of their rights, unwillingness to assume the burden of litigation and many other reasons." The Court doubts that as a matter of law the Commission is required to assume that only plaintiffs were sufficiently energetic, well-advised and litigious to be able to exercise a proper judgment in this matter. The Commission was well within not only its power but its specific duty under the statute when it took note of the prevailing opinion of the overwhelming majority of the class of stockholders here involved.

The reasoning of the Commission attacked by the plaintiffs appears to the Court to be sound. Its findings that "under the Court's decision we are not to consider these rights as if actual liquidation has occurred", that "any value that can be placed on the liquidation rights of the dissenters must be only one that reflects the factual probability or improbability of an actual liquidation taking place at some particular date", that because of the unlikelihood of actual liquidation occurring "little weight can be given to the liquidation preferences as such" and that "these rights were given adequate consideration by the division in reaching the conclusions stated in the report of April 1, 1947, and are fully reflected in the merger terms", leave no choice to this Court but to conclude that the Commission has fully complied with the mandate of the Supreme Court.

*Laches.*

The issue of laches remains for discussion. The Commission and the Chesapeake and Ohio in their respective answers to the complaint of the plaintiffs asserted that this action is barred by laches. The defendant Chesapeake and Ohio in its answer calls attention to the facts that:

"Assets of the Pere Marquette Railway Company have been commingled with those of The Chesapeake and Ohio Railway Company and The Chesapeake and Ohio Railway Company has assumed the indebtedness of Pere Marquette Railway Company, has paid off a considerable amount of its obligations, and has succeeded to the operation of its business, eliminating the name of Pere Marquette Railway Company from tariffs, tickets, bills of lading, folders, guides, and the like. To a large extent, the services of officers and personnel have been extended over the entire property without observance of former separate corporate ownership. Equipment formerly owned by Pere Marquette Railway Company has, to a large extent, been restenciled to indicate Chesapeake and Ohio ownership. Furthermore, as of the present time, virtually all of the Pere Marquette shares of stock have been exchanged for shares of the Chesapeake and Ohio. * * * Dividends have been paid on the Chesapeake and Ohio stock for which Pere Marquette stock was exchanged, and some of this stock has, of course, been sold, or transferred to third persons."

The Chesapeake and Ohio concludes:

"Since separation of The Chesapeake and Ohio Railway Company and Pere Marquette Railway Company properties is now impossible, any attack on the merger or on the merger terms is barred by laches."

The plaintiffs, however, in bringing this action do not seek to have the merger set aside. They merely ask of this Court an order directing the Commission to revise the merger terms and to award them more Chesapeake and Ohio stock in exchange for their holdings of Pere Marquette than is provided for under the merger approved. It does not appear to the Court that the Chesapeake and Ohio would suffer any substantial disadvantage if it were to accede to the plaintiffs' request for a remand. The Court, in reaching its decision on the question of laches, has given weight to the fact that the Chesapeake and Ohio consum-

mated the merger and commingled the properties at the very time the plaintiffs were pursuing their legal remedies.

The defendants also assert that the plaintiffs are guilty of an unreasonable delay in bringing this action. The complaint in this case was filed something less than two years after the Commission filed its Report on Reconsideration and second order. The Court has taken cognizance of the apparent intention of Congress, as expressed in the statutes providing for expeditious review of Interstate Commerce Commission orders, that questions of this nature be disposed of with dispatch. However, no applicable statute of limitations bars the action and the Court is of the opinion that the delay of almost two years, without more, is not unreasonable. The contention of the defendants that this equitable action is barred by the doctrine of laches is without merit.

The Court has some doubt as to the plaintiffs' right in the present action to maintain their action upon any basis except to challenge the Interstate Commerce Commission's ruling upon the liquidation rights and values. The Court observes that the Supreme Court in its opinion in this case affirmatively stated that there was no attack by the plaintiffs upon the Commission's findings that the public interest is served by the merger and unification of these properties and operations. Schwabacher v. United States, 334 U.S. 182, 184, 68 S.Ct. 958, 968, 92 L.Ed. 1305. The Supreme Court reversed and remanded the case in order that the Commission might affirmatively consider the liquidation rights "to the extent that they may affect intrinsic or market values." Nevertheless, this Court has in the interest of expeditious disposition of all possible questions, passed upon the several additional points raised by the plaintiffs in their pleadings.

The Report on Reconsideration and second order of the Commission appearing to the Court to be in accord with the mandate of the Supreme Court, the motion of the plaintiffs for summary judgment is denied and the motions of the defendants for summary judgment are granted.